*Troy Mason v. State of Maryland*, No. 21, September Term, 2023.  Opinion by Hotten, J.

**DISCOVERY – SANCTION FOLLOWING VIOLATION OF THE RULES – EXERCISE OF DISCRETION BY THE CIRCUIT COURT**

The circuit court may exercise sound discretion in determining whether to impose a sanction following its finding of a violation of the discovery rules.  *Hutchins v. State*, 339 Md. 466, 475, 663 A.2d 1281, 1286 (1995).  The Supreme Court of Maryland held that the Appellate Court of Maryland erred in opining that the inadvertent nature of a violation could "in and of itself be dispositive" in holding whether there was an abuse of discretion.  *Mason v. State*, 258 Md. App. 266, 281–82, 297 A.3d 642, 650–51 (2023).  The Court re-affirmed that the circuit court must consider the prejudice suffered by the non-offending party.  *See, e.g.*, *Thomas v. State*, 397 Md. 557, 572, 919 A.2d 49, 58 (2007) ("[T]he [circuit] court's evaluation of a discovery violation necessarily includes determining whether the violation has caused prejudice.").  Given that the circuit court has the discretion whether to impose a sanction, the Court held that "error correction" could justify the admission of evidence regarding items not disclosed in discovery, so long as the circuit court did not abuse its discretion in taking the action.

**CRIMINAL LAW – MISTRIAL – ABUSE OF DISCRETION**

"The grant of a mistrial is considered an extraordinary remedy and should be granted only if necessary to serve the ends of justice.  While it is in the sound discretion of the trial judge to declare a mistrial, he or she may do so only if a high degree of necessity demands that he or she do so[.]" *State v. Hart*, 449 Md. 246, 276, 144 A.3d 609, 626 (2016) (quotation marks and citations omitted).  The Supreme Court of Maryland held that Petitioner failed to establish that there was manifest necessity for a mistrial and thus, the circuit court did not abuse its discretion in denying the request, where Petitioner chose to elicit testimony regarding an item not disclosed in discovery, yet later argued he was prejudiced by this testimony.

**CRIMINAL LAW – CURATIVE INSTRUCTION –ABUSE OF DISCRETION**

"As a general rule, judges are accorded broad discretion in determining whether a particular instruction should be given on a particular occasion[.]" *Carter v. State*, 366 Md. 574, 584, 785 A.2d 348, 353 (2001).  The Supreme Court of Maryland held that the circuit court did not err in applying *Patterson v. State*, 356 Md. 677, 741 A.2d 1119 (1999) and *Cost v. State*, 417 Md. 360, 10 A.3d 184 (2010) to the present case.  The Court further held it was not an abuse of discretion for the circuit court to deny the request by Petitioner for a curative instruction, where the requested instruction was fairly covered by other standard instructions, or alternatively, the request was a motion to strike testimony elicited by the Petitioner.

Circuit Court for Carroll County
Case No.: C-06-CR-21-000610
Argued: February 6, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 21

September Term, 2023

_____

TROY MASON

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Watts,
Hotten,*
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: May 30, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

Troy Mason ("Petitioner") was charged in the Circuit Court for Carroll County with second-degree assault. During trial cross-examination of a law enforcement officer who responded to the scene, both Petitioner and the State discovered that a "strangulation form" supplied through discovery was not the original form completed at the scene. Initially, Petitioner requested a curative instruction. Instead, the circuit court offered Petitioner an opportunity to question the officer outside the presence of the jury, to which Petitioner agreed. After questioning the officer and learning details regarding the alleged original strangulation form, Petitioner elected to proceed with trial and "let the truth come out." The next day, Petitioner moved for a mistrial, and alternatively, requested a curative instruction, both of which were denied.

Petitioner was convicted of second-degree assault and sentenced to ten years of incarceration with all but seven years suspended and a period of supervised probation for five years. The ensuing appeal arose from Petitioner's request for a mistrial or curative instruction. *Mason v. State*, 258 Md. App. 266, 272, 297 A.3d 642, 645 (2023). In a reported opinion, the Appellate Court of Maryland ("Appellate Court") affirmed the conviction and the denial of a mistrial. *Id.* at 274, 297 A.3d at 646. The Appellate Court analyzed the alleged prejudice sustained by Petitioner and concluded it did not warrant a mistrial. *Id.* at 284–85, 297 A.3d at 651–53.

We granted *certiorari* to address the following questions which we have reworded[1] for clarity as follows:

---

[1] As certified, Petitioner presented the following three questions:

(continued . . .)

1. Did the Appellate Court err in ruling that a mistrial was not required by virtue of the inadvertent nature of the discovery error?

2. Is "error correction" following a violation of the discovery rules a permissible justification for the admission of previously undisclosed evidence?

3. Did the circuit court abuse its discretion in denying Petitioner's motion for a mistrial or curative instruction?

We answer Petitioner's first two questions in the affirmative, but answer the third in the negative, holding that the circuit court did not abuse its discretion and the Appellate Court did not err in affirming.

---

(. . . continued)

1. Did the Appellate Court err in ruling that a mistrial was not required simply by virtue of the inadvertent nature of the discovery error?

2. Is "error correction" a legitimate reason to allow previously undisclosed evidence into trial, thereby excusing a discovery violation, where the new evidence contradicts information disclosed during discovery and previously relied on by the defense at trial?

3. Did the courts below abuse their discretion by finding no prejudice warranting a mistrial or curative instruction, where during discovery the State produce a blank Strangulation Supplement documenting no injuries to the complaining witness that was relied on by defense counsel at trial, and where surprise testimony revealed that the disclosed Supplement was erroneous and that the original Strangulation Supplement – which was not produced during discovery -- did document injuries.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### Factual Background

On August 15, 2021, police officers responded to a 911 call reporting a domestic disturbance at 81 ½ Pennsylvania Avenue in Westminster, Maryland. The responding officers included Deputy Carbaugh ("Dep. Carbaugh"),[2] who was responsible for submission of all forms completed on scene to the supervising officer at the police station, and Corporal DeAngelis ("Cpl. DeAngelis"). Cpl. DeAngelis interviewed Ms. G.,[3] the complaining witness at the scene, who alleged Petitioner assaulted and attempted to strangle her.

When a complaining witness alleges an attempted strangulation, officers are required to complete a "Strangulation Supplement" ("strangulation form") consisting of a front and back page.[4] The strangulation form documents the visible injuries the complaining witness sustained and includes input from the witness. The back page of the form contains a series of checkable boxes reflecting where injuries were observed. The form also required officers to reflect on a diagram where the injuries were located and

---

[2] At the time of the incident, Dep. Carbaugh was a patrol officer with the City of Westminster Police Department. Prior to Petitioner's trial, Dep. Carbaugh became a deputy with the Washington County Sheriff's Office.

[3] We use the moniker "Ms. G." to preserve the anonymity of the complaining witness.

[4] The Strangulation Supplement is itself a supplement to the "Maryland Domestic Violence Supplemental," which is a two-page document used to record information about allegations of domestic violence. A copy of the back page of the Strangulation Supplement introduced at trial is attached as Appendix A.

whether the complaining witness had been seen by a medic and referred for medical treatment. Cpl. DeAngelis allegedly completed a strangulation form after speaking with Ms. G.

Following the on-scene interviews, Dep. Carbaugh arrested Petitioner. Dep. Carbaugh submitted the reports completed on the scene, including a strangulation form which had no checked boxes on its back page. On August 31, 2021, the State's Attorney's Office filed a criminal information in the Circuit Court for Carroll County charging Petitioner with second-degree assault.

### Petitioner's Trial

Petitioner's trial was held on March 22 and March 23, 2023. The State called Dep. Carbaugh to testify regarding his investigation of the incident. On direct examination, Dep. Carbaugh testified that he only spoke with Petitioner and had information concerning Ms. G. relayed to him by Cpl. DeAngelis.

> [Dep. Carbaugh:] [W]hen I pulled up, I was advised the suspect was at 76 Pennsylvania Avenue in the parking lot. I turned around. Upon speaking with other officers, the suspect was identified as [Petitioner].
>
> ***
>
> [The State:] Did you make contact with [Petitioner]?
>
> [Dep. Carbaugh:] Yes, I did.
>
> [The State:] And how did that contact go down? What did you do?
>
> [Dep. Carbaugh:] I made contact with [Petitioner]. I tried to understand what was going on with the call. He was stumbling around, slurred speech. I also noticed he had a cut on his right hand. When I was speaking with him, I was pulled away with -- by [Cpl.] DeAngelis and was advised of the victim and what the injuries of the victim were.

4

***

[The State:] When you spoke to [Petitioner], did he tell you anything about what had happened?

***

[Dep. Carbaugh:] [H]e advised me that he left the area for a while, and he was coming home to his girl, which he was referring to [Ms. G.].  [Petitioner] also advised me that he got into an argument with Ms. [G.].

***

[The State:] What else did he tell you?

[Dep. Carbaugh:] That was -- at that moment in time that was it.  Until I was then pulled aside by [Cpl.] DeAngelis and advised of the victim's status.

***

[The State:] And after you finished your conversation did there come a time that you left [Petitioner]?

[Dep. Carbaugh:] No, there was not.

[The State:] Did there come a time that you spoke to anyone else that was at the scene?

[Dep. Carbaugh:] No.  Nobody other than [Cpl.] DeAngelis when he came back to me and gave -- relayed information to me.

[The State:] And based on information you were given from [Cpl.] DeAngelis, then what happened?

[Dep. Carbaugh:] We had enough evidence to [arrest Petitioner].

***

[The State:] And why did you place him under arrest?

[Dep. Carbaugh:] I placed him under arrest for domestic assault.

[The State:] And that was based on what information?

5

[Dep. Carbaugh:] That was based on [Cpl.] DeAngelis's observation of the victim.

[The State:] And who was [Cpl.] DeAngelis speaking with while you were speaking with [Petitioner]?

[Dep. Carbaugh:] He was speaking with [Ms. G.].

During cross-examination, Dep. Carbaugh testified that he was the primary investigator for the scene and had submitted forms which recorded information gained from Ms. G.

[Petitioner's counsel:] So [you were] the primary investigator?

[Dep. Carbaugh:] Yes.  The primary investigator of that sector.

\*\*\*

[Petitioner's Counsel:] Okay.  Now when you were investigating the scene, there are many forms that law enforcement use to fill out either -- let's say a statement of charges or other checkbox forms.  Is that accurate?

[Dep. Carbaugh:] Yes.

\*\*\*

[Petitioner's counsel:] Okay.  And there is domestically related form[s], is that correct?

[Dep. Carbaugh:] Yes.

Petitioner then sought to introduce two forms, which the trial transcripts reflect that Dep. Carbaugh attested to having completed.  The first of these forms was the "Domestic Violence Lethality Screen for Law Enforcement."

[Petitioner's counsel:] Do you recognize this document?

[Dep. Carbaugh:] Yes, I do.

[Petitioner's counsel:] Okay.  And what is this document?

6

[Dep. Carbaugh:] This is the Domestic Violence ---- for Law Enforcement.

[Petitioner's counsel:] Do you recognize when you filled -- well, do you see your name on this page?

[Dep. Carbaugh:] Yes, I do.

*** 

[Petitioner's counsel:] Did you fill it out?

[Dep. Carbaugh:] At the time. Yes, I did.

[Petitioner's counsel:] Okay. But you recognize this[?]

[Dep. Carbaugh:] Yes, I recognize that form.

[Petitioner's counsel:] Is that a true and accurate document?

[Dep. Carbaugh:] Yes.

Without objection from the State, the circuit court admitted the Domestic Violence Lethality Screen for Law Enforcement as Defense Exhibit 1. Petitioner published the exhibit to the jury, and the colloquy proceeded as follows:

[Petitioner's counsel:] In regards to all the responses --- did Ms. [G.] answer in the affirmative to any of these?

[Dep. Carbaugh:] No.

*** 

[Petitioner's counsel:] What did Ms. [G.] do according to this form?

[Dep. Carbaugh:] She answered -- if she didn't answer, everything -- all the answers are unknown or not answered.

Petitioner then sought to introduce the strangulation form.

[Petitioner's counsel:] Do you recognize this form?

7

[Dep. Carbaugh:] Yes.

[Petitioner's counsel:] Explain to the jury what the form is.

[Dep. Carbaugh:] This is the Strangulation Form for domestic violence.

[Petitioner's counsel:] Okay. Is it the form that you filled out for this case?

[Dep. Carbaugh:] Yes.

Without objection from the State, the circuit court admitted the strangulation form as Defense Exhibit 2. Petitioner published the strangulation form and the cross-examination continued as follows:

> [Petitioner's counsel:] So when you come upon the scene of somebody, it sounds like in this case there were -- is it accurate that there were reports of a strangulation? Is that accurate?
>
> [Dep. Carbaugh:] That is correct.
>
> [Petitioner's counsel:] Okay. So you fill out -- this is a form that you guys -- or excuse me. The police have to help aid in gathering information about strangulation. Is that accurate?
>
> [Dep. Carbaugh:] Yes.
>
> [Petitioner's counsel:] Okay. So what we have got in front of you are checkboxes. Who are you trying to observe these things on? [Petitioner]?
>
> [Dep. Carbaugh:] No. Ms. [G.].
>
> [Petitioner's counsel:] Ms. [G.]. Okay. So when we are looking at this document, you see her red face? So because it is unchecked, what does that mean?
>
> [Dep. Carbaugh:] It was unchecked because I -- more or less there wasn't the observation by me with the Strangulation Form at the time.
>
> [Petitioner's counsel:] Okay. And there are no other checkboxes --- to under the chin? Redness, for example, and scratch marks. That is not checked. What does that mean?

8

[Dep. Carbaugh:] The same thing. Since I did not observe the injuries at first, I was not able to check them off.

[Petitioner's counsel:] Okay. And moving over to the eyes and the eyelids,

\*\*\*

there [are] no checks there. So what does that mean?

[Dep. Carbaugh:] That means that there -- if there's no checks, it obviously was not observed.

[Petitioner's counsel:] You didn't see any of that?

[Dep. Carbaugh:] No. Again, I didn't see the injuries.

[Petitioner's counsel:] Okay. Let's -- we will skip over the -- you didn't see a broken nose --

[Dep. Carbaugh:] No.

[Petitioner's counsel:] -- or any issue with the shoulder. Is that accurate?

[Dep. Carbaugh:] That is accurate.

[Petitioner's counsel:] Behind the ear? Again, you didn't see anything behind the ear, is that accurate?

[Dep. Carbaugh:] That is accurate.

[Petitioner's counsel:] Now this is a strangulation report and you had said prior that there is an allegation of strangulation. Did you see or observe, according to this form, any redness on Ms. [G.]'s neck?

[Dep. Carbaugh:] No. Again, I did not make the observation.

[Petitioner's counsel:] All right. So in regards to the neck, all of these various things, redness, scratch marks, fingernail impressions, fingerprint marks, thumbprint bruising, bruises, swelling, ligature marks, you did not observe any of those on Ms. [G.]?

9

[Dep. Carbaugh:] No.  Again, when I was on-scene, I did not make contact with her right --

[Petitioner's counsel:] But you filled out this form, right?

[Dep. Carbaugh:] With -- it has my name on it.  Yes.

[Petitioner's counsel:] Okay.  And then with regard to the mouth and bruising, there is again nothing checked.  You didn't see any bruising or swollen tongue or any of her hair pulled.  Nothing like that.  Is that accurate?

[Dep. Carbaugh:] On my part that is accurate.

[Petitioner's counsel:] And then further on down on this report -- and here is a diagram.  A diagram here.  I assume that is supposed to be of Ms. [G.].  Is that accurate?

[Dep. Carbaugh:] That is a -- that is a diagram of a face . . . where we show where the injuries are located at.

[Petitioner's counsel:] Okay.  There are no marks on any of these examples, is that accurate?

[Dep. Carbaugh:] That is correct.

[Petitioner's counsel:] So by your observations there were no marks on Ms. [G.]  Is that accurate?

[Dep. Carbaugh:] That is correct.

[Petitioner's counsel:] Again, just for clarification, is that your name and that is your --

[Dep. Carbaugh:] That's the approval.  That's my name and that's the approval signature of the sergeant at the time.

[Petitioner's counsel:] Okay.  So that is the form that you filled out?

[Dep. Carbaugh:] That is the form.  Yup.

On redirect examination, Dep. Carbaugh explained that he had completed the strangulation form by relying on information provided to him by Cpl. DeAngelis.

[The State:] When did you have the opportunity to speak to Ms. [G.]?

[Dep. Carbaugh:] I did not really speak with Ms. [G.].

[The State:] So when you filled out the form that [Petitioner's counsel] showed you, what was that based off of?

[Dep. Carbaugh:] That was based off of the information I got from [Cpl.] DeAngelis.

[The State:] And is that common, that you would fill out that form that way?

[Dep. Carbaugh:] Yes. When you have the initial officer arresting the defendant and taking him to central booking, that initial officer is now tied up with booking paperwork, charging applications and I was relying on [Cpl.] DeAngelis relaying information to me, and that is where I was able to fill out -- when I was able to get back to the department to fill out that paperwork.

[The State:] So you never had an opportunity to speak to the victim in this case? To speak to Ms. [G.] in this case?

[Dep. Carbaugh:] That is correct. I did not.

Cpl. DeAngelis was then called to testify. During cross-examination, Cpl. DeAngelis testified that the strangulation form introduced was not the one he completed.

[Petitioner's counsel:] Your Honor, if I may again publish to the jury Defense Exhibit 1 and 2?

[The Court]: You may.

***

[Petitioner's counsel:] And again, Ms. [G.] did not check any [boxes] on [Defense Exhibit 1], correct?

[Cpl. DeAngelis:] So we don't let the victim see that form. I do the checkmarks myself.

***

11

I ask the question and then whether it's yes, nor or not answered.

[Petitioner's counsel:] Okay. So in regard to -- just out of curiosity, in regard to the names, [Dep.] Carbaugh is up there but you are the one that actually created this [form]?

[Cpl. DeAngelis:] Correct. That's my handwriting.

[Petitioner's counsel:] Okay. Then this is Defense Exhibit 2. Did you similarly go through this with Ms. [G.]? Or how is this filled out?

[Cpl. DeAngelis:] The same way. With Ms. [G.].

[Petitioner's counsel:] Did you fill this out?

[Cpl. DeAngelis:] I filled it out, and [Dep.] Carbaugh is the one that signed it.

\*\*\*

[Petitioner's counsel:] [Y]ou were the one that filled this out and not one box is checked, is that correct?

[Cpl. DeAngelis:] That's not -- that's [Dep.] Carbaugh's form. That's his handwriting. That form was not filled out by me. I filled one out. That's not the one that should have been entered into the case file. So that's probably a clerical error on our part, because my boxes were checked. Whether the paperwork got lost, I don't know.

Petitioner interrupted and asked to approach the bench where the following colloquy occurred:

[The Court]: [W]hat are you asking me? If you know. I mean, besides cross[-]examining him on that issue, is there something that you are asking the Court to do?

[Petitioner's counsel:]: At this point I would just -- I am not going so far as to say mistrial kind of territory. But I think there would be at least an instruction to say you can only consider what has been entered into evidence.

12

In lieu of an instruction, the circuit court allowed Petitioner to examine Cpl. DeAngelis outside the presence of the jury. The ensuing testimony transpired:

> [Petitioner's counsel:] On a domestic violence call, how many people fill out this form?
>
> [Cpl. DeAngelis:] Typically it's just the secondary officer if an arrest was made.
>
> [Petitioner's counsel:] And that secondary officer is you?
>
> [Cpl. DeAngelis:] Yes.
>
> [Petitioner's counsel:] So it is you -- it just says that two forms were filled out, is that correct?
>
> [Cpl. DeAngelis:] Two of these forms?
>
> [Petitioner's counsel:] Two of these forms.
>
> [Cpl. DeAngelis:] It could have -- the form that I filled out I know had checkmarks; checkmarks made in the boxes. Whether that form got lost by myself, [Dep.] Carbaugh or by Dispatch, who is -- they enter everything into [Laserfiche] and upload it. That I don't know. Obviously this has [Dep.] Carbaugh's name and the date, which is correct on it. So if I had to make a guess, it's that it was lost by [Dep.] Carbaugh and that he just checked --
>
> [Petitioner's counsel:] It was lost by who?
>
> [Cpl. DeAngelis:] [Dep.] Carbaugh.
>
> [Petitioner's counsel:] Okay.
>
> [Cpl. DeAngelis:] Because that's the correct date . . . [b]ut I know that -- I know that I filled that form out.
>
> [Petitioner's counsel:] But your assumption is that it was lost somewhere and that this was created?

13

[Cpl. DeAngelis:] Because that has to be included in our domestic violence packet. And that since [Dep.] Carbaugh didn't know, he didn't fill out any boxes. He just included the form. He's a new officer.

\*\*\*

[Petitioner's counsel:] While I have you here outside the presence of the jury, were there any forms that -- so you had filled this out that night?

[Cpl. DeAngelis:] Correct.

[Petitioner's counsel:] With Ms. [G.]?

[Cpl. DeAngelis:] Correct.

[Petitioner's counsel:] And then submitted it to [Dep.] Carbaugh that night?

[Cpl. DeAngelis:] Yes . . . [t]his is a strangulation form. So it's only used when there's a strangulation. It's the strangulation supplement. That packet? I then go back to the station. I put it in [Dep.] Carbaugh's mailbox, on his desk, whatever the case might be. It could get lost. Yes.

[Petitioner's counsel:] Okay.

\*\*\*

[Petitioner's counsel:] All right. But the rest of these [forms] are what you have created and you remember seeing these?

[Cpl. DeAngelis:] Correct. I'm the one that filled them all out.

[Petitioner's counsel:] Okay. But this one?

[Cpl. DeAngelis:] The back side I don't -- yeah, I don't know. I don't know what happened with the back side of this form. I know it was completed. I know the boxes were checked. You know, or fit the appropriate boxes. And they also are to circle where they're injured, which was not done.

[Petitioner's counsel:] Yup. Thank you.

14

The parties approached the bench and the following discussion ensued:

[The Court]: I might be at a point where I am going to let you finish cross and then think on this for the night.
[Petitioner's counsel:] Okay.

[The Court]: But it may be a situation where you cross[-]examine him on that issue in front of the jury. You can try and rehabilitate him based on the other forms, and here is -- because in theory that is inconsistent with what he is saying.

\*\*\*

I would also consider any other remedy that you might deem appropriate.

[Petitioner's counsel:] I know.

\*\*\*

[The Court]: And I will need to do my own research. But it is a -- I mean, it is a credibility issue.

\*\*\*

Now there is discovery that wasn't had.

[Petitioner's counsel:] Right.

[The Court]: But he is saying this is the first time I have seen this and that is not the form I filled out. So I am not sure how to remedy it, other than to let you all ask your questions and let the jury figure out what they think happened. But some of that may or may not be -- I mean, he certainly can't say what [Dep.] Carbaugh did or didn't do.

[The State]: Correct.

[The Court]: You might have to recall [Dep.] Carbaugh. I don't know.

[Petitioner's counsel:] Right.

\*\*\*

Okay. I guess we can bring the jury back in. I don't know what to do at this point. I am at a loss myself. I am kind of like an upstanding guy . . . . I hold myself out to be a truthful person, and here it is and that hurts me.

[The Court]: I understand. Which is why I am going to give you overnight and we can revisit this in the morning. But for purposes of today, I -- well, I can do two things. I can either let you finish your cross[-]examination and ferret all this out. Or we can stop for the day now and then have this witness come back tomorrow and finish at that point after you have had [] time to brainstorm and -- you know, that is what I would do. That is what I am going to do when I get off the bench.

[Petitioner's counsel:] Yeah. I would like to at least continue on here today while we are -- I hate to say while the wound is fresh, but at least while we are figuring this out together in some form or fashion. As opposed to us all coming back and then battling it out with our minds. Let's let the truth come out.

The jury returned and Petitioner again questioned Cpl. DeAngelis. The testimony proceeded as follows:

[Petitioner's counsel:] Just to kind of get us back on track, we were discussing this [strangulation] form, is that correct?

[Cpl. DeAngelis:] Yes.

[Petitioner's counsel:] You did not fill out this form, correct?

[Cpl. DeAngelis:] No.

\*\*\*

[Petitioner's counsel:] Okay. So can you explain what [Dep. Carbaugh] is responsible for as it relates to paperwork? I am sorry. What is he responsible for as it relates to the paperwork?

[Cpl. DeAngelis:] He's responsible to have everything; all the domestic violence forms signed off on by the supervisor working by the end of his shift.

\*\*\*

16

[Petitioner's counsel:] If I may, what I am showing the witness is Defense Exhibit 1. This is, I believe, and correct me if I am wrong, part of the [strangulation] form or the packet that you were talking about?

[Cpl. DeAngelis:] Correct.

[Petitioner's counsel:] Okay. Did you fill out this one?

[Cpl. DeAngelis:] I did.

[Petitioner's counsel:] Why would you fill out this one but not [Defense] Exhibit 2, which is this one?

[Cpl. DeAngelis:] The original [Defense] Exhibit 2 was lost.

\*\*\*

Paperwork gets lost . . . [m]y assumption is that [Dep.] Carbaugh -- it's a two-page paper. That's the back side of it that has [Dep.] Carbaugh's signature; that it was lost and he grabbed another one, signed his name on it and submitted it for the packet so that the packet is complete.

\*\*\*

[Petitioner's counsel:] You did not complete -- this specific form[?]

[Cpl. DeAngelis:] I did not complete that form.

[Petitioner's counsel:] But you had completed another form, correct?

[Cpl. DeAngelis:] Correct.

\*\*\*

[Petitioner's counsel:] You said you were primarily the person -- the primary officer speaking with Ms. [G.]. This is State's [Exhibit] 4.[5] It has been already entered as such. I am publishing it to the jury. You don't see any marks on her[ ]wrists? You didn't see any at the time, did you?

[Cpl. DeAngelis:] Not that I remember.

---

[5] State's Exhibit 4 was a photo of Ms. G. taken at the scene.

17

[Petitioner's counsel:] She didn't seem like, you know, somebody who gets hit? You didn't see any marks or bruises? You don't see any marks? Her shoulders? Nothing?

[Cpl. DeAngelis:] Just the neck and chest area.

***

[Petitioner's counsel:] [W]as it just Ms. [G.] that is alleged to have been thrown down the steps[?]

[Cpl. DeAngelis:] [I]t was just [Ms. G.] that was pushed down the stairs.

[Petitioner's counsel:] No broken bones on Ms. [G.]?

[Cpl. DeAngelis:] No. Just the massive lump on her leg.

The next morning, Petitioner moved for a mistrial, where he argued:

I am not alleging any specific misconduct by the State. I am not alleging -- but some sort of discovery -- an issue with discovery. But, Your Honor, the fact the officer placed something into discovery that was not based upon his knowledge, or it seems another officer's knowledge by [Cpl.] DeAngelis's testimony, it is prejudicial to a fair trial.

In this case, Your Honor, I don't believe there is any kind of curative instruction that can be given that would "unring this bell" that is used significantly in case law; and therefore, we would be requesting a mistrial based upon the conduct of [Dep.] Carbaugh.

The circuit court denied the motion, reasoning that,

[t]he specific piece of evidence in this case that we will just say is missing is actually evidence that, based on the testimony now of [Cpl.] DeAngelis, would be favorable to the State.

***

[If Dep.] Carbaugh did what the corporal suspects, which is he doesn't see the form, grabs the second one and signs it and submits it so that all the pages are present, we don't know that unless he is recalled.

***

18

The Court wants to ensure that he is available for recall today [if] necessary.

***

Anyway, the page to [the strangulation form] that is now apparently missing, according to [Cpl.] DeAngelis, would have been favorable to the State. His testimony was that is not the form that I -- Defendant's [Exhibit] 2 is not the form that he had completed, that he had in fact checked off things. He indicated that the signatures on the bottom were correct because the reporting officer -- he said it would have been listed as the assigned officer who is assigned to that sector who would have been [Dep.] Carbaugh.

So I believe that the way that I instructed yesterday is in fact the remedy, which is it is certainly much fodder for cross[-]examination. The Defense is certainly free to argue about either the credibility or the police work or, you know, however he wants to argue that testimony and that conflict in the testimony and the conflict of the evidence and the fact that there was -- according to the corporal there was this other piece of evidence[.]

Petitioner then requested a curative instruction. The circuit court denied that request, relying on *Patterson v. State*, 356 Md. 677, 741 A.2d 1119 (1999) and *Cost v. State*, 417 Md. 360, 10 A.3d 184 (2010),[6] to support its position. Trial proceeded and Petitioner was convicted of second-degree assault. He was sentenced to ten years of incarceration with all but seven years suspended and a period of supervised probation for five years. Petitioner timely appealed to the Appellate Court.

## Opinion of the Appellate Court

In a reported opinion, the Appellate Court affirmed Petitioner's conviction. *Mason v. State*, 258 Md. App. 266, 297 A.3d 642 (2023). The Appellate Court held that the circuit

---

[6] The transcript provides this case as "Kauss v. State[]" and does not provide a citation. Our review has not discovered a Maryland case under that name but *Cost v. State* matches the factual description provided by the circuit court.

19

court had not abused its discretion since "there was clearly no irremediable prejudice of the extreme degree that calls for a declaration of mistrial."[7]  *Id.* at 285, 297 A.3d at 653. The Appellate Court characterized a mistrial as a discretionary and "extraordinary remedy that should only be resorted to under the most compelling of circumstances."  *Id.* at 274, 297 A.3d at 646.

In observing that the case at bar was "remarkably parallel" to *Raynor v. State*, 201 Md. App. 209, 228, 29 A.3d 617, 628 (2011), the Appellate Court noted that *Raynor* approved the refusal to grant a mistrial where the circuit court found "no deliberate discovery violation by the State."  *Id.* at 280–81, 297 A.3d at 650 (emphasis omitted). Following from this, the Appellate Court opined that:

> [The circuit court's] finding that the glitch in the present case was similarly an inadvertent mistake was similarly not clearly erroneous.  [Its] final ruling that a mistrial would not be declared, therefore, was accordingly not an abuse of discretion. . . .
>
> That finding that the failure to check the boxes (or properly to report that some of the boxes had been checked) had been an inadvertent error and not an instance of a bad faith effort to subvert justice could in and of itself be dispositive of our holding that [the circuit court] did not abuse [its] discretion in denying the mistrial motion.

---

[7] Before the Appellate Court, Petitioner raised the denial of his request for a curative instruction.  *See* Petitioner's brief in the Appellate Court, 9 ("[T]he [circuit] court . . . abused its discretion by denying both [Petitioner]'s motion for a mistrial *and his request for a curative instruction*.") (emphasis added).  The State, albeit in limited fashion, responded to this contention.  *See* State's brief in the Appellate Court, 2 ("[Petitioner] argues that the [circuit] court erred in denying his mistrial motion *and motion for a curative instruction*[.]  This Court should reject his argument.") (emphasis added).  In its opinion, the Appellate Court does not address the denial of Petitioner's request for a curative instruction.

*Id.* at 281–82, 297 A.3d at 650–51. In analyzing whether Petitioner suffered prejudice by the discovery violation, *Id.* at 282–85, 297 A.3d at 651–53, the Appellate Court observed that the alleged prejudice was not the failure of the State to disclose the original strangulation form, but rather the "correction of that error." *Id.* at 282, 297 A.3d at 651.

The Appellate Court held that Petitioner "suffered no harm from the error. The error itself was to the obvious detriment of the State and to the undeserved advantage of the appellant." *Id.* at 283–84, 297 A.3d at 652. The Appellate Court reasoned that Petitioner, "who had at least temporarily, benefited from an error, lost that benefit when the truth came out. If that was prejudice, it was very [limited] prejudice. He was denied the continued enjoyment of an error in his favor." *Id.* at 284, 287 A.3d at 652. The Appellate Court concluded that the circuit court "acted with appropriate restraint" when not ordering a mistrial. *Id.* at 285, 297 A.2d at 653. Petitioner timely appealed and this Court granted *certiorari*. *Mason v. State*, 486 Md. 147, 303 A.3d 964 (2023).

## DISCUSSION

### Standard of Review

"The circuit court is vested with broad discretion in administering discovery. Therefore, this Court reviews for abuse of discretion a circuit court's decision to impose, or not impose a sanction for a discovery violation." *Alarcon-Ozoria v. State*, 477 Md. 75, 90–91, 266 A.3d 313, 321 (2021) (cleaned up). "[A]n abuse of discretion should only be found in the extraordinary, exceptional, or most egregious case." *Wilson v. John Crane, Inc.*, 385 Md. 185, 199, 867 A.2d 1077, 1084 (2005). "[T]he [circuit] court's decision must be well removed from any center mark imagined by the reviewing court and beyond the

21

fringe of what that court deems minimally acceptable." *Devincentz v. State*, 460 Md. 518, 550, 191 A.3d 373, 391 (2018) (quotation marks and citation omitted). "We review the trial and intermediate appellate courts' legal conclusions, however, nondeferentially." *Anderson v. Burson*, 424 Md. 232, 243, 35 A.3d 452, 459 (2011).

### Inadvertent Nature of Non-disclosure is Not Dispositive in the Decision to Grant or Deny a Mistrial.

Petitioner relies on *Williams v. State*, 364 Md. 160, 177, 771 A.2d 1082, 1092 (2001),[8] to argue that allowing inadvertent discovery violations to escape sanction would allow "State's Attorneys [to] slip beyond the grasp of discovery rules by claiming ignorance, and thereby force the defendant to enter trial unaware of the evidence to be offered against him." In response, the State argues that the Appellate Court recognized that the inadvertence of the discovery violation was not dispositive and that the Appellate Court conducted an analysis of the prejudice suffered by Petitioner. Although we recognize that a statement in the Appellate Court's decision could be read to suggest that inadvertence would alone be sufficient to reject sanctions, we agree with the State that the Appellate Court did not ultimately rule on that basis. Instead, the Appellate Court proceeded to analyze whether the Petitioner suffered prejudice and rendered its holding based on its assessment of a lack of prejudice.

We have held that the circuit court has discretion whether to order sanctions following a discovery violation. *See, e.g.*, *Hutchins v. State*, 339 Md. 466, 475, 663 A.2d

---

[8] *Williams* has been abrogated on unrelated grounds by *State v. Jones*, 466 Md. 142, 216 A.3d 907 (2019).

1281, 1286 (1995) ("[R]emedy under . . . the discovery rule is within the sound discretion of the trial judge."); *Alarcon-Ozoria*, 477 Md. at 108, 266 A.3d at 331–32 ("When a discovery violation comes to light in the course of trial, whether any sanction is to be imposed and, if so, what it is to be, is in the first instance committed to the discretion of the trial judge.") (cleaned up). The exercise of discretion requires evaluating whether prejudice was suffered by the non-offending party. *See, e.g.*, *Warrick v. State*, 302 Md. 162, 173, 486 A.2d 189, 194 (1985) ("The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice."); *Alarcon-Ozoria*, 477 Md. at 108, 266 A.3d at 332 (same); *Thomas v. State*, 397 Md. 557, 572, 919 A.2d 49, 58 (2007) ("[T]he [circuit] court's evaluation of a discovery violation necessarily includes determining whether the violation has caused prejudice.").

Here, the Appellate Court opined "[t]hat finding . . . the failure to check the boxes (or properly to report that some of the boxes had been checked) had been an inadvertent error . . . could *in and of itself be dispositive of our holding that [the circuit court] did not abuse [its] discretion* in denying the mistrial motion." *Mason*, 258 Md. App. at 282, 297 A.3d at 651 (emphasis added). As *Warrick*, *Alarcon-Ozoria*, and *Thomas* hold, prejudice *must* be considered when the circuit court exercises discretion whether to impose a sanction following a violation of the discovery rules. It was error for the Appellate Court to state that inadvertence could be dispositive of a sanction analysis under Maryland Rule 4-263(n).[9] Inadvertence may be a factor in a court's decision whether to impose sanctions

_____

[9] Maryland Rule 4-263(n) governs applicable sanctions following a discovery

(continued . . .)

and, if so, which sanctions to impose. But the mere fact that a discovery violation was inadvertent does not remove the trial court's obligation to determine whether another party was prejudiced by the violation and, if so, what sanctions might be necessary to remedy that prejudice.

**"Error Correction" May Support the Decision Not to Impose a Sanction Barring the Introduction of Evidence Not Disclosed During Discovery.**

Petitioner relies on *Williams* to argue that information not properly disclosed in discovery should be inadmissible at trial, where contradictory information is provided instead. Petitioner points to the facts in *Williams*, where the State asserted prior to trial that an officer could not identify the defendant but during trial the officer identified the defendant. Petitioner contends his case is similar to *Williams* as he was "surprised by trial evidence that contradicted more favorable information that he had received pre-trial and relied on at trial." The State responds that *Williams* demonstrates that the testimony contradicting the strangulation form supplied during discovery was not itself a discovery

---

(. . . continued)
violation and provides in full that

> [i]f at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances. The failure of a party to comply with a discovery obligation in this Rule does not automatically disqualify a witness from testifying. If a motion is filed to disqualify the witness's testimony, disqualification is within the discretion of the court.

24

violation. The State contends *Williams* held that the State's failure to disclose pretrial identification was the discovery violation, not the in-court testimony, which revealed the discovery violation.

Maryland Rule 4-263(n) provides in relevant part, "[i]f at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court *may . . .* strike the testimony to which the undisclosed matter relates[.]" (Emphasis added). As discussed above, whether to order sanctions following a discovery violation is a discretionary exercise by the circuit court. *E.g.*, *Thomas*, 397 Md. at 570, 919 A.2d at 57 ("[T]he presiding judge has the discretion to select an appropriate sanction, but also has the discretion to decide whether any sanction is at all necessary."). Generally, the circuit court should consider imposing the least severe sanction and "[e]xclusion of evidence for a discovery violation is not a favored sanction" reserved for "extreme cases." *Id.* at 572–73, 919 A.2d at 58–59. In accordance with *Thomas*, the circuit court may choose whether to impose a sanction following a discovery violation, and may allow the admission of evidence not disclosed during discovery, within the exercise of sound discretion. Accordingly, under appropriate circumstances, "error correction"—by which we understand Petitioner to mean a trial court permitting a party to introduce new evidence that contradicts evidence that the party previously had provided in error—could justify the circuit court admitting undisclosed evidence.

Petitioner's reliance on *Williams* is misplaced. In *Williams*, we held that the circuit court erred in admitting the identification of a defendant where "the trial judge made *no specific finding as a matter of law that the State violated the discovery rule*, and therefore

25

he *exercised no discretion* in fashioning a remedy for the discovery violation." 364 Md. at 178, 771 A.2d at 1093 (emphasis added). Unlike *Williams*, in the case at bar, the circuit court noted a discovery error before proposing several options to address the error. This recognition takes this case away from *Williams* and returns our focus to whether the circuit court abused the discretion it exercised. *See id.*, 771 A.2d at 1092 ("The remedy . . . for a violation of the discovery rule is, in the first instance, within the sound discretion of the trial judge."). As we discuss below, we hold the circuit court did not abuse its discretion, given its finding that the discovery error proved beneficial to Petitioner. Thus, we hold that mere recognition of a discovery error does not require exclusion of associated evidence. The circuit court had the discretion to allow evidence regarding the missing form to test the credibility of the testifying officers.

**The Circuit Court Did Not Abuse its Discretion.**

Petitioner argues that he was prejudiced by the State's discovery violation because he relied at trial on the incomplete form provided to him during discovery, which also hampered his ability to engage in informed plea negotiations. Petitioner relies on *Thomas* to assert that a defendant suffers prejudice where they experience unfair surprise at trial. He argues the mid-trial discovery of the original strangulation form came as a surprise to him. Petitioner also contends the prejudice he sustained could not have been cured by the circuit court's proposed cross-examination and that a mistrial was necessary. Petitioner further argues the circuit court's reliance on *Patterson* and *Cost* to deny his request for a curative instruction was an abuse of discretion, given their inapplicability to Petitioner's case.

26

The State relies on *Kosh v. State*, 382 Md. 218, 226, 854 A.2d 1259, 1264 (2004), to argue that the determining factor when considering a mistrial is whether the prejudice was so substantial as to deprive the defendant of a fair trial. The State argues that the discovery violation was beneficial to Petitioner because it called into question Ms. G.'s version of events and damaged the credibility of Dep. Carbaugh. The State further argues that Petitioner used the contradiction between the strangulation form and the testimony in his closing remarks.

This Court affords wide discretion to a circuit court in its evaluation of prejudice from a discovery error because

> the judge is in the best position to evaluate it. The judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able to ascertain the demeanor of the witnesses and to note the reaction of the jurors and counsel to inadmissible matters. That is to say, the judge has [their] finger on the pulse of the trial.

*State v. Galicia*, 479 Md. 341, 385, 278 A.3d 131, 156 (2022), *reconsideration denied* (Aug. 10, 2022), *cert. denied*, 143 S. Ct. 491, 214 L. Ed. 2d 280 (2022). We find an abuse of discretion in the egregious cases where the circuit court has moved beyond the fringe of minimal acceptability. *Wilson*, 385 Md. at 199, 867 A.2d at 1084; *Devincentz*, 460 Md. at 550, 191 A.3d at 391.

Maryland Rule 4-263(d)(3)(C) requires the disclosure of "all written statements of the [State's] witness that relate to the offense charged[.]" Failure by the police to turn over documents to prosecutors, who in turn, fail to submit those documents to the defense, is a discovery violation. *Robinson v. State*, 354 Md. 287, 304, 730 A.2d 181, 190 (1999). Maryland Rule 4-263(n) provides, in relevant part, that "[i]f at any time during the

proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court *may . . .* grant a mistrial[]" or other relief. (Emphasis added). The circuit court has discretion whether to order sanctions following discovery violation. *E.g.*, *Hutchins*, 339 Md. at 475, 663 A.2d at 1286.

Specifically, "[t]he decision to declare a mistrial is an exercise of the trial judge's discretion and is entitled to great deference by a reviewing court[,]" but the circuit court may exercise its discretion to declare a mistrial "only if a high degree of necessity demands that he or she do so[.]" *State v. Hart*, 449 Md. 246, 276, 144 A.3d 609, 626 (2016) (cleaned up). Regarding Petitioner's requested curative instruction, "[a]s a general rule, judges are accorded broad discretion in determining whether a particular instruction should be given on a particular occasion[.]" *Carter v. State*, 366 Md. 574, 584, 785 A.2d 348, 353 (2001).

The discovery rules seek to protect all parties from surprise, and in the case of a criminal trial, the defendant is prejudiced only where they are unduly surprised and thereby not afforded an opportunity to prepare a proper defense. *Thomas*, 397 Md. at 567, 570–71, 574, 919 A.2d at 55, 57–59; *see also Johnson v. State*, 360 Md. 250, 265, 757 A.2d 796, 804 (2000) ("We have explained that the rule serves dual purposes. In terms of fundamental fairness, broad discovery aids the defendant in preparing his or her defense and protects him or her from surprise at trial."). Ultimately, "[c]riminal defendants have the right to a fair, yet not a perfect, trial." *State v. Payton*, 461 Md. 540, 559, 195 A.3d 1249, 1260 (2018).

First, we disagree with Petitioner's contention that he was entitled to a mistrial. "[T]o determine manifest necessity to declare a mistrial, the trial judge must weigh the

unique facts and circumstances of each case, explore reasonable alternatives, and determine that no reasonable alternative exists." *Hart*, 449 Md. at 277, 144 A.3d at 627 (cleaned up). In *Hart*, the circuit court declared a mistrial when the defendant was involuntarily absent from the courtroom. *Id.* at 256–57, 144 A.3d at 614. We held "that [a] manifest necessity did not exist, and the trial judge abused her discretion in declaring a mistrial" where "[g]ranting a short continuance . . . was feasible and would have cured the problem associated with proceeding in [the defendant]'s absence." *Id.* at 278, 281, 144 A.3d at 627, 629.

*Thomas* and *Silver v. State*, 420 Md. 415, 23 A.3d 867 (2011), are also instructive. In *Thomas*, we held that the defendant "ha[d] failed to demonstrate any prejudice he ha[d] suffered as a result of the delay in disclosure[]" where he learned only a week before trial of a witness testifying for the State. 397 Md. at 574, 919 A.2d at 59. We reasoned that the timing of the discovery "afford[ed] defense counsel an opportunity to interview the witness and to prepare for cross-examination[]" but that the defendant "requested only that the [circuit] court exclude the evidence." *Id.* at 572, 919 A.2d at 58. *Silver* examined the prejudice from the mid-trial "surprise" discovery of a report authored by a testifying witness and held that

> it [was] hard to see how this information 'surprised' or 'prejudiced' [Mr. Silver's] case . . . [where] Mr. Silver [was] given time to consider this testimony, an opportunity to cross-examine the State's witnesses . . . and the opportunity to call his own witness[,] . . . [and] if [Mr.] Silver's counsel was surprised . . . this testimony was but one of many indicia of [Mr.] Silver's ownership that the State introduced at trial.

420 Md. at 433–34, 23 A.3d at 877–78. While this particular evidence was surprising, the defendant did not suffer prejudice from what was cumulative evidence adduced from other sources. *Id.*, 23 A.3d at 877–78.

Similar to *Thomas* and *Silver*, Petitioner fails to demonstrate that he was prejudiced. Petitioner argues Cpl. DeAngelis's testimony on the undisclosed strangulation form prejudiced him by undercutting his use of the blank form supplied during discovery. He contends that his trial strategy depended in significant part on using the absence of documented injuries on the strangulation form to undermine the testimony of Ms. G. and the officers, which was reflected in his cross-examination of Dep. Carbaugh on that issue. He argues that the later discovery that the form was not accurate undermined the credibility of that defense in the eyes of the jury.

However, the circuit court concluded that the discovery violation—the failure to turn over the form actually completed by Cpl. DeAngelis—operated to Petitioner's benefit, both because the jury never saw that form and because the inconsistency between the testimony of the two officers provided an additional basis for defense counsel to question the credibility and sufficiency of the evidence against him. In other words, with the opportunity to have viewed the entirety of the proceedings and the presentation of evidence in the case, the circuit court concluded that Petitioner was aided, not prejudiced, by the State's conduct. We find no abuse of discretion in that conclusion.

During testimony outside the presence of the jury, Petitioner elicited from Cpl. DeAngelis that

30

the form that I filled out I know had checkmarks; checkmarks made in the boxes . . . [b]ut I know that -- I know that I filled that form out.

\*\*\*

I don't know what happened with the back side of this form. I know it was completed. I know the boxes were checked.

The circuit court offered Petitioner a continuance as an opportunity to prepare for how to address the discovery error. Petitioner chose to forgo the offered recess and instead "let the truth come out." Before the jury, Petitioner elicited from Cpl. DeAngelis substantially similar testimony, including that Cpl. DeAngelis had observed marks on "the neck and chest area[]" of Ms. G. and that Ms. G. had a "massive lump on her leg." The circuit court also ensured that Dep. Carbaugh was made available for recall, should Petitioner have wished to cross-examine him further in light of Cpl. DeAngelis's contradictory testimony about the form, but Petitioner never availed himself of the opportunity.

Like in *Silver*, Petitioner had many opportunities to rectify whatever surprise he perceived and we do not see unfair prejudice where he chose instead to elicit the testimony he now challenges. Petitioner's strategic decisions do not demonstrate a "manifest necessity" for a mistrial and the circuit court's refusal to grant a mistrial is not the egregious case where this Court finds an abuse of discretion. *Hart*, 449 Md. at 277, 144 A.3d at 627; *Wilson*, 385 Md. at 199, 867 A.2d at 1084.

Second, the circuit court did not abuse its discretion in denying the request for a curative instruction. In resolving Petitioner's motion, the circuit court relied on *Patterson* and *Cost*. We first examine the circuit court's reliance on these cases without deference.

31

*See Anderson*, 424 Md. at 243, 35 A.3d at 459 ("We review the trial and intermediate appellate courts' legal conclusions . . . nondeferentially."). In denying Petitioner's request, the circuit court stated

> I am looking right now at *Patterson* . . . [and] it says that when a party fails to produce evidence, an inference may be made against that party. But many inferences, however, may be drawn from the missing piece of evidence and emphasis on one possible inference out of all of the rest by a trial judge specifically, and I take that to mean in the form of a curative instruction, can be devastatingly influential upon a jury, although unintentionally so. And therefore, *it goes on to say that it is within the judge's discretion in those circumstances*.

(Emphasis added). Applying the discretion interpreted from *Patterson*, the circuit court distinguished the present case with *Cost*, reasoning that

> in [*Cost*] there were allegedly, you know, bloody linens and items that were not recovered, not produced and the judge in that instance, they indicated, should have given a missing instruction that these are things that normally would have been recovered and tested and that an inference against the State could have been made in that case. And I distinguish that from this instance for reason that I said, which is that this alleged missing piece of evidence in fact would have been favorable to the State based on the evidence that we have.

We find no legal error or abuse of discretion. In *Patterson*, the police searched a jacket and discovered a controlled substance. 356 Md. at 681, 741 A.2d at 1121. Police did not collect the jacket, instead photographing it and introducing the photo at trial. *Id.* at 681–82, 741 A.2d at 1121. The defendant wished to use the jacket to demonstrate that it did not fit him, and when it was unable to be produced, he asked the circuit court to instruct the jury that they could infer from the absence that the jacket "would have been unfavorable to the State." *Id.* at 682, 741 A.2d at 1121. *Patterson* held that

[w]hen evidence is missing, apparently due to the act or omission of one of the parties, an inference that the evidence would have been unfavorable to that party may be appropriate. . . . We now further refine the issue in the case *sub judice* by holding that, *regardless of the evidence, a missing evidence instruction generally need not be given*; the failure to give such an instruction is neither error nor an abuse of discretion.

*Id.* at 688, 741 A.2d at 1124–25 (emphasis added). *Patterson* further noted that the circuit court "provide[d] another [general] instruction and allow[ed] defense counsel to call the jury's attention to the inference." *Id.* at 689, 741 A.2d at 1125.

*Patterson* was distinguished by *Cost*, which held "the unusual facts here stand in stark contrast to those in *Patterson*." *Cost*, 417 Md. at 380, 10 A.3d at 196. The unique record in *Cost* evidenced that the State had failed to properly collect evidence, promptly submit collected evidence for testing, and maintain an appropriate chain of custody. *Id.*, 10 A.3d at 196. Ultimately the State destroyed the evidence. *Id.*, 10 A.3d at 196. We held that

[s]uch evidence might well have created reasonable doubt as to [the defendant's] guilt. This missing evidence could not be considered cumulative, or tangential—it goes to the heart of the case. We are persuaded that under these circumstances a 'missing evidence' instruction, which would permit but not demand that the jury draw an inference that the missing evidence would be unfavorable to the State, should have been given.

*Id.* at 380–81, 10 A.3d at 196.

We agree with the circuit court's application of *Patterson* and *Cost*. The strangulation form completed by Cpl. DeAngelis is tantamount to missing evidence, since "due to the act or omission of one of the parties," a form purported to have been completed at the scene was not submitted to the State or Petitioner. *Patterson*, 356 Md. at 688, 741 A.2d at 1124. The case at bar does not share similarly "unique" factors which warranted

33

our holding in *Cost*. The strangulation form Cpl. DeAngelis testified to having completed was amongst evidence including photos of Ms. G. from the scene, Ms. G.'s testimony, an eyewitness's testimony, and, notably, the testimony of Cpl. DeAngelis on the undisclosed strangulation form elicited by Petitioner. Instead, the case at bar resembles *Patterson* as the circuit court allowed Petitioner to explore the implications of the undisclosed form on the witnesses' credibility and provided, as discussed below, a similar general instruction. Accordingly, we hold the circuit court was correct in applying those cases and distinguishing the present matter from *Cost*.

Since there was no error with the legal application, we turn to whether the circuit court abused its discretion in denying to give the curative instruction. "[J]udges are accorded broad discretion in determining whether a particular instruction should be given on a particular occasion, . . . a defendant does not have an absolute right to a curative instruction regarding the inappropriate admission of prejudicial evidence." *Carter*, 366 Md. at 584, 587, 785 A.2d at 353, 355 (citation omitted). Additionally, Maryland Rule 4-325(c) requires "the giving of a requested instruction when[:] . . . (1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State*, 404 Md. 187, 197–98, 946 A.2d 444, 450 (2008).

To ascertain whether the circuit court abused its discretion, we must initially consider what Petitioner requested. The record demonstrates that immediately upon learning of the undisclosed strangulation form, Petitioner requested "an instruction to say [that the jury] can only consider what has been entered into evidence." In again raising his

34

request the following day, Petitioner stated "[i]f the mistrial motion has been denied, we would be requesting a curative instruction." Although Petitioner's express request was for an instruction that the jury was limited to considering only the evidence before it, it appears that what he may actually have been seeking was an instruction to disregard Cpl. DeAngelis's testimony regarding the undisclosed strangulation form. In either case, we see no abuse of discretion by the circuit court in denying the motion.

The requested instruction matched in content to the instructions given by the circuit court at the close of the trial:

> In making your decision, you must consider the evidence in this case, that is testimony from the witness stand and physical evidence or exhibits admitted into evidence.
>
> ***
>
> The following things are not evidence and you should not give them any weight or consideration: Any testimony that I struck or told you to disregard and any exhibits that I struck or did not admit into evidence, questions that the witnesses were not permitted to answer and objections of the lawyers, and the charging document.

Thus, despite the denial of Petitioner's request, the jury was ultimately instructed to review only what had been entered into evidence. Accordingly, denial of Petitioner's request for an instruction to "only consider what has been entered into evidence" was not an abuse of discretion. *Cf. Dickey*, 404 Md. at 197–98, 946 A.2d at 450 (requiring "the giving of a requested instruction when[:] . . . (3) the content of the instruction *was not fairly covered* elsewhere in instructions actually given.") (emphasis added).

Assuming, *arguendo*, that what Petitioner really wanted was for the court to strike the testimony of Cpl. DeAngelis, we do not see an abuse of discretion by the refusal of the

circuit court to do so. As an initial matter, Petitioner never expressly made that request. As discussed above, Petitioner chose to elicit testimony on the undisclosed form before the jury after he questioned Cpl. DeAngelis outside of the presence of the jury. For this Court to conclude there has been an abuse of discretion, "the [circuit] court's decision must be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Devincentz*, 460 Md. at 550, 191 A.3d at 391 (internal quotation omitted). We do not believe that the circuit court was well removed from any center mark, given Petitioner's choice to knowingly elicit the testimony he later sought to strike.

In conclusion, we reiterate that a defendant is entitled to a fair trial, not a perfect trial. *Payton*, 461 Md. at 559, 195 A.3d at 1260 ("Criminal defendants have the right to a fair, yet not a perfect, trial."). Here, the circuit court did not abuse the considerable discretion we afford circuit courts. The circuit court concluded that Petitioner was not prejudiced by the discovery of the undisclosed strangulation form because the form provided in discovery was helpful to him and because the two testifying officers gave conflicting testimony about the form. Petitioner still chose to proceed with cross-examination on the missing form with Cpl. DeAngelis. Accordingly, we hold that the circuit court did not abuse its discretion by refusing to grant Petitioner's requests and answer Petitioner's third question in the negative.[10]

---

[10] We note that the State raised in its briefing and argument a claim that Petitioner waived any argument regarding a mistrial or curative instruction. Maryland Rule 8-131(b)(1) provides in relevant part, "the Supreme Court ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that

**Conclusion**

The circuit court did not abuse its discretion in denying Petitioner's requests for a mistrial or curative instruction under the circumstances presented in this case. We therefore affirm the judgment of the Appellate Court.

**JUDGMENT OF THE APPELLATE COURT IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

(continued . . .)

(. . . continued)
has been preserved for review by the Supreme Court." Having reviewed the record, we conclude that Petitioner did not waive the claims raised in this appeal. Additionally, given our disposition on the merits of the case at bar we need not reach harmless error.

# Appendix A

Strangulation Supplement, page 2

Defense's Exhibit 2

The following injures were observed on the following locations

**Face**
☐ Red or flushed
☐ Pinpoint red spots (petechiae)
☐ Scratch marks

**Eyes/Eyelids**
☐ Petechiae to R and/or L eyeball (circle one)
☐ Petechiae to R and/or L eyelid (circle one)
☐ Bloody red eyeball(s)

**Nose**
☐ Bloody nose
☐ Broken nose
☐ Petechiae

**Behind Ear**
☐ Petechiae R/L/Both ears (circle)
☐ Ear canal bleeding R/L/Both ears (circle)

**Mouth**
☐ Bruising
☐ Swollen tongue
☐ Swollen lips
☐ Cuts/abrasions

**Under Chin**
☐ Redness
☐ Scratch marks
☐ Bruise(s)
☐ Abrasions

**Chest**
☐ Redness
☐ Scratch marks
☐ Bruise(s)
☐ Abrasions

**Shoulders**
☐ Redness
☐ Scratch marks
☐ Bruise(s)
☐ Abrasions

**Neck**
☐ Redness
☐ Scratch marks
☐ Finger nail impressions
☐ Fingerprint Marks
☐ Thumbprint Bruising
☐ Bruise(s)
☐ Swelling
☐ Ligature mark

**Head**
☐ Petechiae (on scalp)
☐ Hair pulled
☐ Bump
☐ Skull fracture
☐ Concussion

Other (describe): _____

Defensive Wounds (describe): _____

Use face & neck diagrams to mark visible injuries:

Injury Report

FRONT    BACK

SIDE

Was victim evaluated by Medics? (YES) NO
If yes, medic number: 37

Was victim transported to hospital/or did YES (NO)
victim seek medical treatment?

Investigating Officer ID#: Ofc Calbaugh #156    Date: 8-15-21

Supervisor's Approval ID#: Sgt Wah 057    Date: 8-16-21

SAO43

App. 10

EXHIBIT
Defense
2
C.06.CR.21.610

E.175

38